UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PRISCILLA J. THOMPSON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:19-cv-644

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Priscilla J. Thompson filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In February 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning July 23, 2015. She alleges disability based upon diabetes, sleep apnea, learning complications/memory/concentration, secondary insomnia/sleep disorder, anxiety/depression/stress, diverticulitis, hysterectomy/hormonal imbalance, high cholesterol/high triglycerides, navel hernia/unable to lift, and arthritis in her hands and back. (Tr. 21, 61). Plaintiff has a high school education, and worked for approximately twenty years as an assistant insurance underwriter prior to leaving that

1

employment in December 2012. (Tr. 68). After leaving the insurance industry, Plaintiff had several unsuccessful work attempts as a receptionist, an administrative assistant, and a cashier. (*Id.*) Plaintiff's claim was denied initially and upon reconsideration, leading her to request an evidentiary hearing before an ALJ.

On April 11, 2018, Plaintiff appeared with counsel and gave testimony before ALJ Christopher Tindale; a vocational expert also testified. (Tr. 31-56). Plaintiff was 57 years old on the alleged disability onset date, but subsequently changed age categories to "closely approaching retirement age," and was 60 years old at the time of the ALJ's adverse decision. (*See* Tr. 15-26). The ALJ determined that the only severe impairments Plaintiff has are diabetes mellitus, obesity, mood disorder, and anxiety disorder. (Tr. 18). Plaintiff does not presently dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of medium work, subject to the following limitations:

> [S]he is limited to simple and complex tasks in a work environment free of fast production rate or pace work. She can have occasional contact with the public and supervisors, and only occasional and superficial contact with co-workers, with superficial contact defined as no tandem tasks. She is limited to only occasional changes in the work setting and only occasional decision making required.

(Tr. 20). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the representative jobs of packer, cleaner, or material handler. (Tr. 26). Therefore, the ALJ determined that Plaintiff was

not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that: (1) the ALJ improperly weighed the opinion evidence; (2) the ALJ improperly evaluated her subjective complaints; and (3) the ALJ presented an improper hypothetical to the vocational expert. Plaintiff argues that the referenced errors led to the improper determination by the ALJ that she could perform work at the "medium" exertional level. Had the ALJ instead limited Plaintiff to "light" or "sedentary" work, she would have been entitled to an age-related presumption of disability under Grid Rule 202.06, 20 C.F.R. Part 404, Subpart P, Appendix 2.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

3

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Claims

#### 1. No Error in Assessment of Physical RFC Opinion Evidence

Plaintiff first asserts error in the evaluation of the medical opinion evidence concerning her alleged physical limitations. Social security regulations generally provide for an order of hierarchy in the evaluation of medical opinion evidence, with the opinions of treating physicians to be given the most weight, and the opinions of examining consultants to be given greater weight than the opinions of non-examining consultants. For claims filed before March 27, 2017, the regulations specify that "[g]enerally," an ALJ is required to "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you," with the most weight, or "controlling weight" to be given to treating physicians. 20 C.F.R. § 404.1527(c)(1) and (2). Of note in this case, no treating physician offered *any* medical opinions concerning Plaintiff's functional limitations. Instead, the medical opinion evidence was offered by several non-examining agency consultants, one examining consultant, and a physical therapist ("PT"), all of whom provided opinions dated between May and September 2016.

Based upon her allegations of pain-related impairments, Plaintiff was referred for a consultative examination by a physical medicine and rehabilitation physician, Gary Ray, M.D., on May 24, 2016. (Tr. 392-399). His exam revealed mostly normal findings, including normal ambulation and the ability to reach 100% of a squat position without difficulty, and normal muscle testing throughout range of motion. One of Dr. Ray's only findings on exam was "mild tenderness at the center and right lumbosacral paraspinal muscle area." (Tr. 394). However, he found no tenderness on the left, no muscle spasms, and a negative straight leg raising test. (Tr. 394). Dr. Ray also found no tenderness at the left shoulder or at the right or left cervical paraspinal muscle areas. (*Id.*) Aside from

the "mild" finding in one muscle area of the back, Dr. Ray's only other finding was "possibly mild arthritis of the right third and fourth PIP joints," based upon "mild tenderness" and "slight swelling" in two fingers in her right hand. (*Id.*) Nevertheless, Plaintiff "had no difficulty gripping and manipulating with the hands." (*Id.*)

During her exam, Plaintiff subjectively reported to Dr. Ray that she could lift no more than 10 pounds, was able to sit only 15-20 minutes at a time, and stand for 30 minutes, or walk for up to 15-20 minutes. (Tr. 393). Notwithstanding her lack of difficulty on exam, she also reported difficulty squatting, as well as trouble with bending, ascending and descending steps. (*Id.*) Dr. Ray did not fully accept Plaintiff's subjectively reported restrictions. However, he still opined that Plaintiff should be restricted to lifting and carrying no more than 20 pounds, sitting or standing for up to two hours, and ambulating one hour at a time. In other words, Dr. Ray opined that Plaintiff should be limited to work at the "light" exertional level. (Tr. 395).

On May 26, 2016, a non-examining consulting physician, Edmond Gardner, M.D., reviewed Dr. Ray's consultative examination report as well as other medical records submitted by Plaintiff and disagreed with the limitation to "light" work, opining instead that Plaintiff could perform a full range of medium work. (Tr. 57-65, 69). On reconsideration on August 17, 2016, a second non-examining consultant, William Bolz, M.D., agreed that Plaintiff could perform a full range of work at the "medium" exertional level. (Tr. 79, 84). On September 3, 2016, Susan Clifford, M.D. provided a "medical consultant's review of physical residual functional capacity assessment" in which she expressed the same opinion. (Tr. 441-442).

The only other opinion evidence concerning Plaintiff's physical limitations was offered by a physical therapist ("PT") who performed a one-time Functional Capacity

6

Evaluation on August 21, 2016 at the request of Plaintiff's treating physician, Dr. Samaan, in order to support her disability claim. (Tr. 444-458). At that time, the physical therapist noted that Plaintiff's work goal was "permanent and total disability." (*Id.*) Plaintiff reported numerous complaints that she had not reported to her primary care physician. The PT noted that "some inconsistencies were identified for problems reported or exam findings." (Tr. 455). The PT also stated that Plaintiff "has had no conservative treatment such as physical therapy to address her back pain," and was "deconditioned at present and would benefit from physical therapy." (Tr. 458). The PT opined that Plaintiff "should improve her overall tolerance for activity with appropriate therapy and as such should have temporary restrictions…until such time as she has completed physical therapy." (*Id.*) The PT assessed "temporary" restrictions for work at the sedentary level, with only occasional fingering and lifting around seven pounds, and "seldom" standing or walking. (Tr. 458).

Ultimately, the ALJ accepted the opinions of the non-examining consulting physicians who reviewed Plaintiff's records and determined she could perform "medium" level work, rejecting the more limited functional opinions of Dr. Ray or the PT. Plaintiff argues that this was error for several reasons.

I find no error. Though frequently litigated, both regulations and case law make clear that an ALJ may give the greatest weight to the opinions of even a non-examining consultant in appropriate circumstances. *See* SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996); *accord Miller v. Com'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). This case presents such a circumstance.

Plaintiff first complains that the ALJ "erred in failing to note the medical specialties" of the non-examining consulting physicians. According to Plaintiff, a code next to Dr. Bolz's signature reflects that he is an orthopedist by training. She argues (without citation

7

to relevant authority) that because he does not have specialized training in *diabetes*, that "lessens the weight assigned to him." (Doc. 10 at 1-2).[1] The evaluation of medical opinions includes consideration of many factors, including a physician's specialization. However, an ALJ is not required to perform an exhaustive, step-by-step analysis of each factor in weighing medical source opinions. *See Biestek v. Com'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (*aff'd on other grounds*, 139 S. Ct. 1148). Included among the relevant factors to be considered is familiarity with SSA programs. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Here, the fact that Dr. Bolz had specialized orthopedic training does not diminish the fact that under SSR 17-2p, 2017 WL 3928306 at *3 (March 27, 2017), he was a state agency consultant. Such consultants are considered to be a "highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the [Social Security] Act." *Id.*; *see also*, SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996) (same).

Plaintiff's next complaint, that the consultants whose opinions the ALJ accepted did not have access to her complete record, also fails to persuade.[2] *See, generally, Blakley v. Com'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009). The only records cited by Plaintiff in support of this argument are those that relate to her elevated A1C levels for diabetes, and a single record in which she was diagnosed with plantar fasciitis in her right foot in December 2017. I find no *Blakley* error, because the ALJ discussed all relevant records. *See Gibbens v. Com'r of Soc. Sec.,* 659 Fed. Appx. 238,

---

[1]Plaintiff makes a similar complaint about the non-examining medical consultant, Dr. Clifford, who Plaintiff asserts is a pediatrician by specialty training. However, the ALJ did not specifically discuss or rely upon Dr. Clifford's opinion.
[2]It is worth noting that Dr. Ray, the one-time examining consultant whose opinion Plaintiff urges this Court to adopt, had access to the least complete record.

8

248 (6th Cir. Aug. 16, 2016) (affirming where "the ALJ's own analysis clearly spanned the entire record" and "was informed by both [the state agency consultant's] assessment and the findings of [a prior] complete physical examination, as well as medical evidence later entered into the record.").

For example, Plaintiff now claims that her plantar fasciitis would have prevented her from standing the number of hours required to perform medium work. However, the ALJ found that Plaintiff's right foot plantar fasciitis (along with several other diagnoses) did not cause "more than minimal limitation in the claimant's ability to perform basic work activities" and was "nonsevere." (Tr. 18). The ALJ additionally explained "[i]t is not clear that the claimant's plantar fasciitis lasted 12 months, and there are few complaints," with normal musculoskeletal findings on exam. (*Id*). The ALJ's analysis of Plaintiff's plantar fasciitis is substantially supported by the record as a whole.

The undersigned similarly finds no error in the ALJ's analysis of Plaintiff's diabetes-related records. Plaintiff was diagnosed with Diabetes Mellitus Type 2 in August 2009, long before her July 2015 alleged disability onset date. (Tr. 286). Her Hemoglobin A1C level (a measure of average blood sugar) has varied through the years,[3] but shortly before the consulting physicians' records review, on February 15, 2016, her A1C had increased to 8.3% and on May 20, 2016, it was 8.4% (Tr. 418). Contrary to Plaintiff's assertion that the non-examining consultants were unaware of her elevated A1C, they specifically referenced her 8.3% elevated A1C. (Tr. 61). However, in sharp contrast to Plaintiff's testimony in which she claimed blurred vision, nausea, and frequent urination resulting from her diabetes, there are no clinical or objective records reflecting any complications

---

[3]In 2014, her A1C was recorded at 5.5, 6.0 and 6.2. (Tr. 324, 327, 330). A few months prior to her alleged disability onset date, in February 2015, her A1C was 5.6, a reading within "normal range." (Tr. 326)

from her elevated A1C or from her diabetes. Thus, the ALJ accurately stated that records reflected that Plaintiff's "diabetes was without complications, including consistent normal monofilament exams and no complaints of ulcers, motor or sensory disturbances, no dizziness and of frequent urination and she did not wish to start on an insulin regimen despite elevated A1c." (Tr. 23).

Under the umbrella of her claim concerning the opinion evidence, Plaintiff argues that the ALJ erred by stating that "an A1C level below 8 was normal." (Doc. 6 at 7). However, the ALJ's opinion contains no such statement. Rather, the opinion states only that Plaintiff's "diabetes is not noted to be uncontrolled with her A1c below 8." (Tr. 23). The ALJ also accurately pointed to records that reflected Plaintiff's "poor compliance with [diabetes] medications." (*Id.*)

The ALJ's summary of the record provides no grounds for reversal. Most of Plaintiff's records state that her diabetes was "controlled" with most A1C findings below 8. The ALJ specifically acknowledged her occasional A1C readings above 8, including in February and November 2016. (Tr. 22-23). On November 21, 2016, Dr. Samaan briefly diagnosed Plaintiff's Type 2 diabetes as "uncontrolled" based upon her elevated A1C of 8.3% (Tr. 488). At that same visit, he prescribed a new medication, which proved effective in reducing her A1C below 8 and restoring the "controlled" diagnosis. In February 2017 her A1C had decreased to 7.8% (Tr. 480), by May 23, 2017 it had decreased further to 7.5% (Tr. 475), and remained stable in August 2017, (*see* Tr. 469 reflecting A1C of 7.6%) through December 2017. (*See* Tr. 464, reflecting A1C of 7.5%). On March 5, 2018, her A1C again had risen slightly to 7.7%. Noting that Plaintiff's diabetes was again "uncontrolled," (Tr. 498), Dr. Samaan spoke to Plaintiff about the possible need to add insulin injections, which she did not want to add at that time. (*See*

10

Tr. 23, discussing Tr. 494-495, 499).[4] Thus, despite a discrete number of records reflecting brief periods of "uncontrolled" diabetes, Dr. Samaan made medication changes that more consistently resulted in a "controlled" diabetes diagnosis. (Tr. 302-311). Far more importantly than any diagnosis, however, her treating physician's records reflect no complications at all from her diabetes. (*See, e.g.*, Tr. 317, 476, 481). The non-examining agency consultants, as well as the ALJ, reasonably relied upon this substantial evidence reflecting that Plaintiff's diabetes was not disabling and did not limit her to work at less than the "medium" exertional level.

Plaintiff argues that if only the ALJ had accepted Dr. Ray's limitation to light work and/or the PT's restriction of sedentary work rather than the medium exertional level found by the non-examining consulting physicians, she would have been entitled to a presumption of disability based upon Grid Rule 202.06. However, the ALJ reasonably explained he gave Dr. Ray's opinion "little weight" because it was "not consistent with [the] lack of diagnostic studies of back or neck pain or arthritis of the hands and minimal, mild findings on physical examinations…." (Tr. 22). The ALJ additionally reasoned that Dr. Ray's restriction to light work "appears to be based, at least in part, on [Plaintiff's] subjective complaints and Dr. Ray noted some inconsistent effort." (*Id*). The stated reasons are well-supported on the record presented.

Plaintiff makes much of the fact that her primary care physician referred her to the physical therapist for a functional assessment because Dr. Samaan "did not want to complete" RFC forms. (Doc. 6 at 3). However, the fact that a treating physician refers his patient for a one-time assessment by a physical therapist does not mean that her

---

[4] Plaintiff asserts that it was error for the ALJ to have referenced Plaintiff's decision not to use insulin. (Doc. 6 at 7). I find no error. The ALJ accurately summarized the medical record on this issue.

11

assessment is somehow entitled to greater weight. A physical therapist does not qualify as an "acceptable medical source" under social security regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1527(c). Here, the ALJ's reason for giving the PT's FCE opinion "little weight" as "not consistent with the longitudinal record," (Tr. 23), is substantially supported by the record as a whole. The ALJ noted that Ms. Crothers was a physical therapist who performed a one-time exam and pointed out that even she suggested that her "sedentary" functional restrictions were designated to be only "temporary." (*Id.*)[5]

In contrast to the opinions of Dr. Ray and the PT, the ALJ gave the opinions of Drs. Gardner and Bolz "significant weight" because "the record shows that [Plaintiff's] severe physical impairments of obesity and diabetes cause very little symptoms or restrictions based on the consistently normal physical exam findings and lack of diagnostic studies." (Tr. 24). For the reasons discussed, substantial evidence supports the ALJ's analysis.

### 2. No Error in the Assessment of Plaintiff's Subjective Complaints

Notwithstanding the lack of support for diabetes-related limitations, Plaintiff insists that her diabetes would prevent her from being able to sustain medium work based upon her subjective testimony about her fatigue and frequent urination. (Tr. 43, 45). However, the ALJ determined that Plaintiff's subjective complaints about the intensity, persistence and limiting effects of her symptoms were "inconsistent" and "do not support the existence of" any limitations beyond those determined by the ALJ's physical RFC assessment for medium work. (Tr. 22). Plaintiff now argues that the ALJ erred in his adverse credibility determination.

---

[5]Plaintiff *cites Shaw v. AT &T Umbrella Ben. Plan No. 1*, a case involving disability benefits under ERISA, for the proposition that the functional capacities evaluation constitutes "objective evidence" to support her claim. *Shaw* does not aid Plaintiff in this case, because the ALJ's analysis was supported by other substantial (and equally "objective") evidence that Plaintiff was not limited to sedentary work.

The ALJ's assessment, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). The new ruling emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms, including the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, 2017 WL 5180304, at *7–8; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p.

13

Despite clarifying the basis for the analysis of subjective complaints and corresponding elimination of the term "credibility" from the text in order to avoid "character analysis," SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007).

The elimination of the word "credibility" from SSR 16-3p can be semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase "credibility determination." Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed "consistency determination" under SSR 16-3p, with few exceptions. *See Duty v. Com'r of Soc. Sec.*, 2018 WL 4442595 at *6 (S.D. Ohio Sept. 18, 2018) ("existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.").

Turning to that case law, it is clear that a reversal of the Commissioner's decision based upon error in a credibility/consistency determination requires a particularly strong showing by a plaintiff. Like the ultimate non-disability determination, the assessment of subjective complaints must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997). Further, a credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Plaintiff argues that the ALJ should have placed greater emphasis on factors that would have supported a more favorable credibility finding, such as her prior work record. However, the fact that some evidence might be found to support Plaintiff's claim does not provide grounds for reversal as long as substantial evidence supports the ALJ's determination. The present record provides ample support for the ALJ's finding that the Plaintiff's complaints of debilitating fatigue, pain, and other extreme limitations in her ability to sit, stand, and walk were not consistent with the record. *See Walters*, 127 F.3d at 532 ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). Contrary to her subjective complaints, the medical evidence reflected mostly normal findings, with no complications from her diabetes.

Plaintiff asserts that the ALJ improperly assumed that "not taking Insulin means that the diabetes is not significant." (Doc. 6 at 8). Reviewing the ALJ's opinion as a whole and in context, the undersigned finds no error. The ALJ referenced medical records that confirmed that Plaintiff's variable blood sugar control was at times tied to medication noncompliance, and that her treating physician had suggested insulin on at least two occasions in order to help her gain better control of her diabetes but she had not wanted to start that medication. (Tr. 24, citing Tr. 460-489). Despite her periodically elevated

15

A1C, Plaintiff's monofilament exams were all consistently normal, and she denied nausea, vomiting, diarrhea or dizziness. (Tr. 23). Although Plaintiff was consistently diagnosed with diabetes and obesity, her treating physicians noted no complications or symptoms associated with those conditions. (*Id.*)

The ALJ pointed out that Plaintiff had numerous physical and psychological complaints that were not substantiated by her treatment records. Besides objective findings and medication, the ALJ also properly considered the level and type of treatment that Plaintiff sought and obtained in determining whether she was disabled. For example, she attempted to establish primary care with Dr. Cubbison in February 2016 in order to pursue her disability claim. (Tr. 22, 376-80). The ALJ noted that despite obtaining referrals for various diagnostic studies, the record did not reflect that she had followed up with those studies, nor was she prescribed any medications. (Tr. 22). Instead, Dr. Cubbison's exam notes reflect normal findings, as did many other clinical records. *Id.* The ALJ considered other inconsistencies, such as Plaintiff testifying that she could not lift even a gallon of milk and could sit or stand less than an hour, which testimony was undermined by her reports to Dr. Samaan of injuring her arm when she was doing a lot of lifting at home and exercising. (Tr. 24).

Plaintiff complains about the ALJ's evaluation of her daily activities but again I find no error. *See* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that Plaintiff performed many daily activities such as caring for her dog, preparing meals, making the bed, doing laundry, washing dishes, driving, shopping for groceries, shopping on-line for gifts, and attending church twice per week, and had no difficulty with personal care. (Tr. 24). The ALJ did not err by relying on Plaintiff's activities of daily living and household chores alone as a basis for the nondisability determination, but appropriately considered them in the context

16

of the record as a whole. See *Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 162, 173 (6th Cir. 2016) ("The ALJ contrasted Sorrell's ability to do daily activities with her reports of pain—noting that Sorrell is "able to prepare simple meals, perform various household duties with breaks, handle personal care, drive, and shop"); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability). Accordingly, the ALJ's evaluation of Plaintiff's subjective complaints is substantially supported.

### 3. The Vocational Expert's Testimony Constitutes Substantial Evidence

Plaintiff's final claim is mostly cumulative. She asserts that the ALJ improperly "left out the supported limitation to light work from Dr. Ray and the limitation to sedentary work" from the physical therapist. (Doc. 6 at 10). She maintains she would miss additional days of work based upon her alleged fatigue and that she would need frequent bathroom breaks. However, an ALJ is required to include only the limitations that he determines are supported by the record. *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993). A VE's testimony in response to an accurate hypothetical question constitutes substantial evidence to support a non-disability determination. See *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). For the reasons discussed, I find no error in the RFC limitations as determined by the ALJ.

In a final attack on the vocational expert's testimony, Plaintiff argues that the VE's testimony here does not constitute substantial evidence based upon a portion of the testimony elicited on cross-examination. In questioning the VE, counsel first confirmed that under the relevant definition of medium unskilled work; Plaintiff would only be required to stand six hours per day. (Tr. 53). Plaintiff's counsel then followed up by asking if the representative "cleaner" position would require eight hours of standing, whereupon

17

the VE somewhat vaguely responded:  "Yes, but you have some opportunity to sit when you're in meetings and things."  (Tr. 53).

Based upon the DOT descriptions for all three job titles that the VE offered as "representative" positions, Plaintiff speculates that none of those jobs would include 2 hours per day of "meetings."  However, the VE did not strictly limit Plaintiff's sitting to attending meetings, but did unequivocally testify that someone with Plaintiff's RFC limitations at the "medium" level (including postural limitations) could perform a significant number of jobs in the national economy.  To the extent that Plaintiff questions the referenced job descriptions listed in the DOT, the VE also testified that to the extent that there were topics not addressed by the Dictionary of Occupational Titles, his testimony was based upon his professional experience.  (Tr. 50-51).  Therefore, the undersigned finds no reversible error in the ALJ's reliance upon the VE's testimony.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

            /s *Stephanie K. Bowman*
            Stephanie K. Bowman
            United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PRISCILLA J. THOMPSON,

    Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:19-cv-644

Cole, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

19