UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**PRISCILLA T.**,

      **Plaintiff,**

v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Case No. 1:19-cv-644
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on the Magistrate Judge's June 22, 2020, Report and Recommendation ("R&R") (Doc. 11), which recommends that this Court affirm the Commissioner of Social Security's ("Commissioner") decision and close this case. For the reasons more fully set forth below, the Court **OVERRULES** Plaintiff's Objection (Doc. 12), **ADOPTS** the Magistrate Judge's R&R (Doc. 11), and **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**.

## BACKGROUND

This case arose as a result of the Social Security Administration ("SSA") denying Plaintiff certain social security disability benefits. On February 18, 2016, Plaintiff applied for benefits, claiming she was disabled due to a variety of conditions including diabetes, sleep apnea, learning disabilities, anxiety, diverticulitis, hysterectomy, high cholesterol, a navel hernia, and arthritis. (*See* First Certified Admin. R. ("R."), Doc. 4, #74–75). On June 15, 2016, the SSA denied Plaintiff's

application. (*See id.* at #32). On reconsideration, the SSA again denied the claim on August 17, 2016. (*Id.*).

Pursuant to Plaintiff's request, an SSA Administrative Law Judge (the "ALJ") held a hearing on April 11, 2018. (*Id.*). The ALJ issued a decision denying benefits on August 23, 2018. (*Id.* at #29). The ALJ concluded that Plaintiff could perform "medium work" (as defined by SSA regulations), albeit with a restriction to "simple and complex tasks in a work environment free of fast production rate or pace work," and therefore was not disabled. (*Id.* at #37). On July 15, 2019, the Appeals Council of the SSA declined to review the ALJ's decision. (*Id.* at #18).

On August 6, 2019, Plaintiff filed a Complaint asking this Court to reverse the ALJ's decision. (*See* Doc. 1). The Court assigned the matter to a Magistrate Judge under Southern District of Ohio Civil Rule 72.2. *See also* Cincinnati Gen. Order No. 14-01 (referring appeals from decisions of the Commissioner of Social Security regarding Social Security benefits to Magistrate Judges).

On December 13, 2019, Plaintiff filed her Statement of Specific Errors (Doc. 6). Plaintiff challenged the ALJ's decision on three bases.

First, Plaintiff argued that the ALJ gave too little weight to evidence offered by sources who had examined her, and too much weight to evidence offered by sources who had not. (*Id.* at #528). Specifically, Plaintiff argued that the ALJ should have given more weight to a Functional Capacities Evaluation (the "FCE") by a physical therapist. (*Id.* at #526). Plaintiff likewise argued that the ALJ failed to give sufficient weight to an examination by Dr. Gary Ray which found Plaintiff capable of only light

2

work. (*Id.* at #529). On the other hand, Plaintiff maintained that the ALJ gave too much weight to the opinions of state agency doctors who did not examine Plaintiff. (*Id.* at #528).

Second, Plaintiff argued that the ALJ improperly discounted her subjective reports of pain and fatigue. Plaintiff argued that the ALJ misunderstood the normal glycated hemoglobin ("A1C") level and therefore misinterpreted Plaintiff's own A1C level as undermining the credibility of her subjective complaints. (*Id.* at #531). Plaintiff also argued that the ALJ improperly relied on the fact that Plaintiff does not take insulin to discount Plaintiff's subjective complaints. (*Id.*). And Plaintiff objected to the ALJ's reliance on Plaintiff's ability to carry out daily activities as a basis to discount some of Plaintiff's subjective complaints. (*Id.* at #531–32).

Third, Plaintiff argued that the ALJ erred in crediting a vocational expert's testimony that jobs in the medium work category could allow Plaintiff to sit for as much as two hours of an eight-hour day. (*Id.* at #533). According to Plaintiff, the ALJ also asked the expert improper hypothetical questions based on the inapposite factual determination that Plaintiff could do medium work. (*Id.* at #533–34).

On June 22, 2020, the Magistrate Judge issued an R&R (Doc. 11), recommending that this Court close Plaintiff's case. On July 1, 2020, Plaintiff filed a timely Objection (Doc. 12). On July 9, 2020, Plaintiff further filed a Notice of Filing Additional Authority ("Notice," Doc. 13), bringing to the attention of this Court an arguably pertinent case that the Sixth Circuit had decided on the previous day, as

3

discussed in more detail below. The Commissioner did not respond to Plaintiff's Objection (Doc. 12). The matter is now before this Court.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

But that is not the only relevant standard of review here. In this case, the Magistrate Judge was reviewing a decision by an ALJ employed by the SSA. Judicial review of such decisions is quite constrained. In particular, courts are "limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ealy*, 594 F.3d at 512. So long as substantial evidence supports the Commissioner's conclusion, the Court should affirm, even if substantial evidence in the record would also support a different conclusion. *Id.*

However, even if supported by substantial evidence, a decision should not be affirmed if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Putting all that together, this Court's job is to review de novo, on those issues as to which the Plaintiff objects, whether the Magistrate Judge was correct in determining that the ALJ's decision applied the correct legal standards (including the SSA's own regulations) and was supported by substantial evidence.

## LAW AND ANALYSIS

For purposes of Social Security disability benefits, a disability is defined in relevant part as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By regulation, the SSA has developed a five-step analysis to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4).[1] As relevant here, to be entitled to benefits, a claimant may not be gainfully employed, and must have a severe, medically determinable physical or mental impairment. *See id.* The SSA considers some impairments, listed in a regulatory appendix, to be so severe that they automatically entitle a claimant to benefits. *See id.* But if a

---

[1] The first of these regulatory sections applies to applications for disability insurance benefits, the second to applications for Supplemental Security Income disability benefits. *Compare* 20 C.F.R. § 404.1520(a)(2), *with* 416.920(a)(2). Their requirements are identical in all respects relevant here.

5

claimant's impairment, or its equivalent, does not appear on the SSA's list, then the SSA must consider whether the claimant can work, either by continuing to do the kind of work the claimant has done in the past (if any), or by making an adjustment to a new kind of work. *See id.* If so, the claimant is not disabled. *See id.*

Here, the ALJ concluded that Plaintiff's diabetes mellitus, obesity, mood disorder, and anxiety disorder were all "severe impairments." (R., Doc. 4, #35). However, the ALJ further determined that none of these impairments were of comparable severity to an impairment listed in the applicable regulatory appendix. (*See id.* at #35–37). The ALJ also determined that Plaintiff had the capacity to make an adjustment to performing "medium work" as defined by another pair of SSA regulations. (*See id.* at #37). According to the relevant regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567 and 416.967.

The issue of whether Plaintiff can adjust to performing medium work, as opposed to "light" or "sedentary" work, is important to the outcome of this case. If Plaintiff can make an adjustment to medium work, she is not disabled. On the other hand, if she can only perform "light" or "sedentary" work, then Plaintiff would be entitled to a presumption of disability because of her age and education. *See* 20 C.F.R., Part 404, Subpart P, App. 2, Grid Rule 202.06. Here, the ALJ's determination that Plaintiff can make an adjustment to performing medium work with some modifications also formed the basis for his determination that jobs Plaintiff can perform exist in significant numbers in the national economy. (R., Doc. 4, #42).

6

Although Plaintiff attacks the ALJ's pertinent determinations on numerous grounds, the Court considers her objections in three categories. First, Plaintiff argues that the ALJ erred as a matter of law in failing to either afford controlling weight to the results of the FCE requested by Plaintiff's treating physician, Dr. Samaan, or give good reasons for declining to do so. (Obj., Doc. 12, #595–96; Notice of Filing Additional Authority ("Notice"), Doc. 13, #603). Second, Plaintiff argues that the ALJ's conclusion that Plaintiff can perform medium work is not supported by substantial evidence. (*See* Obj., Doc. 12, #597–600). Third, Plaintiff argues that the ALJ's conclusion that jobs Plaintiff can perform exist in significant numbers in the national economy also is not supported by substantial evidence. (*Id.* at #600–01).

**A.    The ALJ Properly Declined To Give Controlling Weight To The FCE Because Dr. Samaan Did Not Co-Sign Or Otherwise Agree With It.**

When a medical opinion comes from a treating physician, an ALJ of the SSA must give that opinion "controlling weight" if it is well-supported by medically acceptable techniques and is consistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If an ALJ determines that the opinion of a treating physician should receive less than controlling weight, the ALJ must give "good reasons" for doing so. *See* 20 C.F.R. § 404.1527(c)(2). Under the applicable version of the relevant SSA regulations, a treating physician is "your own physician … who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902 (June 13, 2011). A treating physician sees the claimant "with a frequency consistent with accepted

7

medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.*

Plaintiff faults the ALJ and Magistrate Judge for failing to give controlling weight to the FCE requested by Plaintiff's physician, Dr. Samaan. (Obj., Doc. 12, #594). A week after Plaintiff's Objection, the Sixth Circuit decided *Hargett v. Commissioner of Social Security*, 964 F.3d 546, 553 (6th Cir. 2020), holding that a treating physician may adopt as his own the opinion of a non-treating source, such as the FCE provided by the physical therapist here, by co-signing it, thereby requiring the ALJ to treat the opinion as though the treating physician had issued it. Plaintiff immediately brought *Hargett* to this Court's attention, arguing that the FCE at issue here, like the one in *Hargett*, is therefore both entitled to controlling weight and subject to the requirement to give good reasons for affording it anything less than that. (*See* Notice, Doc. 13, #602–03).

But Plaintiff skips over the dispositive difference between the FCE in *Hargett* and the one at issue in the instant case: here, unlike in *Hargett*, Dr. Samaan did not co-sign the FCE. *See Hargett*, 964 F.3d at 549 (treating physician "reviewed the FCE and provided his signature in a designated spot"). That matters because the Sixth Circuit in *Hargett* formulated the issue before it as "whether [the treating physician's] *signature* on the FCE … makes the FCE a treating-source opinion …." *Id.* at 553 (emphasis added). Noting that district courts had reached "mixed conclusions" as to that issue, with some also requiring that the co-signed opinion come from another provider from "the same treatment team or practice," the Sixth Circuit instead

8

"decline[d] to adopt a strict rule that a treating source *who co-signs an opinion by a non-treating source* must be part of the same team or practice as the non-treating source in order for the opinion to be considered an opinion of the treating source." *Id.* (emphasis added). The Sixth Circuit based its conclusion on the principle that "a doctor's *cosignature* indicates at a minimum that the doctor agrees with the other source's opinion." *Id.* (emphasis added) (citation and internal quotation marks omitted). Because "a treating physician may adopt or ratify the opinion of a non-treating source *by providing a signature*," there was no reason to limit the applicability of the treating-physician rules to co-signed opinions given by other providers in the same team or practice. *Id.* (emphasis added). And specifically, in the case before it, "given that [the physician] was [the claimant's] treating physician *and signed off on the results of the FCE*," the Sixth Circuit "conclude[d] that the ALJ should have considered the FCE as a treating-source opinion." *Id.* (emphasis added).

Recognizing the rationale of *Hargett*, as well as its limitation to situations where the treating physician signed or otherwise adopted the opinion of the non-treating source in question, at least one court in this circuit has already declined to regard a non-treating source's opinion as that of the treating physician where the treating physician did not co-sign the opinion. *See Riechman v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-494, 2021 WL 3856014, at *11 (S.D. Ohio Aug. 30, 2021) ("Although [the treating physician] referred plaintiff for a FCE, there is no indication, and plaintiff has not presented evidence in the record, that any of plaintiff's 'treating' physicians' signatures … appear on the FCE form.") (internal citation omitted).

9

Here, Dr. Samaan's signature does not appear on the signature page of the FCE in question. (*See* R., Doc. 4, #475). Instead, the space for "Physician's Signature" is blank. (*See id.*). And Plaintiff does not point this Court to anything else in the record that indicates that Dr. Samaan otherwise adopted, approved, or even reviewed the results of the FCE. Instead, Plaintiff nakedly asserts that "Dr. Samaan did not disagree with the findings …." (Notice, Doc. 13, #602). But this claim lacks either factual or legal support. Plaintiff cites nothing in the record that establishes Dr. Samaan's supposed lack of disagreement with the FCE findings beyond the page of the FCE itself where Dr. Samaan's signature fails to appear. (*See id.*). It would be strange, to say the least, for this Court to infer Dr. Samaan's lack of disagreement with the FCE's findings from the absence of his signature on the page of the FCE that provided space for him to sign.

As a legal matter, too, Plaintiff's did-not-disagree argument gets things backwards. Under *Hargett*, a treating physician's signature justifies treating the relevant opinion as if it came from the treating physician because it "indicates at a minimum that the doctor *agrees* with the other source's opinion." 964 F.3d at 553 (emphasis added). The Sixth Circuit thus framed the issue as whether the treating physician affirmatively "agrees" (and not merely fails, for whatever reason, to disagree) with the medical opinion in question. So even if there were any support in the record for Plaintiff's factual assertion that Dr. Samaan "did not disagree" with the FCE's findings, which there is not, that alone would not be enough to invoke the rule of *Hargett* and treat the FCE's opinions as Dr. Samaan's own. For example, if

10

Dr. Samaan failed to disagree with the FCE's findings because he never reviewed those findings at all, that would not entitle the FCE to controlling weight, because, although arguably not disagreeing, Dr. Samaan would also have failed to agree with the opinions expressed in the FCE. Instead, Plaintiff would at least have to show that Dr. Samaan *agreed* with the FCE's findings before they would be entitled to the treatment afforded the opinions of the treating physician.[2]

True, Dr. Samaan referred Plaintiff for the FCE at issue in this case, just like the treating physician referred the *Hargett* claimant for that claimant's FCE. *See* 964 F.3d at 553. But, as discussed above, the Sixth Circuit in *Hargett* rested its conclusion about the FCE's status on the treating physician's signature, not on his mere referral of the claimant. *See id.* And that makes some sense. After all, the mere fact that a treating physician refers a patient to another source does not mean that the treating physician "agrees" with the conclusions ultimately reached by that non-treating source, which, by definition, postdate the referral. *See id.* Accordingly, this Court declines to stretch *Hargett* to cover situations such as this one where the treating physician refers the claimant to a non-treating source, but where there is neither a signature from the treating physician nor any other indication in the record that the treating physician subsequently agreed with the conclusions reached by the non-treating source. *Cf. Riechman*, 2021 WL 3856014, at *11 (referral by treating

---

[2] The Court need not, and does not, decide which indicia other than a cosignature, if any, might also suffice as a matter of law to support the conclusion that a treating physician agrees with a non-treating medical source's opinion such that that opinion is entitled to controlling weight. Here, beyond Dr. Samaan's mere referral of Plaintiff for the FCE, Plaintiff has not pointed the Court to *any* indication that Dr. Samaan agreed with the FCE's conclusions, as discussed above.

11

physician, without signature thereof, insufficient to entitle opinion of otherwise non-treating source to treating-physician status).

Because the FCE at issue here was not the opinion of a treating physician, the ALJ did not err in declining to afford it controlling weight. Moreover, even if the ALJ failed to give good reasons for affording the FCE less than controlling weight, this failure was not error because the "good reasons" requirement applies only to the opinions of a treating source. *See* 20 C.F.R. § 404.1527(c)(2). The Court therefore **OVERRULES** Plaintiff's Objection (Doc. 12) to the Magistrate Judge's R&R (Doc. 11) to the extent that Plaintiff argues the ALJ should have treated the FCE as the opinion of a treating physician.

**B.    Substantial Evidence Supports The ALJ's Conclusion That Plaintiff Can Perform Medium Work.**

Apart from her legal argument that the ALJ failed to treat the FCE as the opinion of her treating physician, discussed above, the bulk of Plaintiff's arguments focus on the ALJ's determination that Plaintiff can perform medium work.

To start, Plaintiff argues that the ALJ improperly weighed medical opinion evidence by assigning more weight to the opinions of state agency sources who did not examine her than to those of sources who did. Specifically, Plaintiff argues that the ALJ should have given greater weight to both the conclusion of Dr. Ray, a consultant who examined Plaintiff, that Plaintiff could only perform light work, and to the conclusion of the FCE that Plaintiff could only perform sedentary work. (Obj., Doc. 12, #595, 597). On the other hand, Plaintiff argues that the ALJ should not have accepted the conclusions of three non-examining consultants, Drs. Edmond Gardner,

William Bolz, and Susan Clifford, that Plaintiff could perform medium work, in part because, according to Plaintiff, Dr. Bolz's specialization in orthopedics was less relevant than Dr. Ray's specialization in physical therapy. (*Id.* at #597).

The Court concludes that substantial evidence supports the ALJ's assignment of weight to the medical opinion evidence. The ALJ's decision to discount Dr. Ray's conclusion that Plaintiff can perform only light work is based in part on the inconsistency of that conclusion with Dr. Ray's specific findings, which were mostly normal, as well as on Dr. Ray's reliance on Plaintiff's subjective complaints, an issue discussed in more detail below. (*See* R., Doc. 4, #39). Similarly, the ALJ's decision to discount the FCE's conclusion that Plaintiff could conduct only sedentary work was based on the "extreme" character of this conclusion and the fact that even the FCE said the restriction to sedentary work was only temporary. (*See id.* at #40). On the other hand, the ALJ gave "significant weight" to the opinions of non-examining state agency consultants who reviewed Plaintiff's medical record that Plaintiff could perform medium work in part because the record disclosed "consistently normal physical exam findings." (*Id.* at #41). Plaintiff has failed to show that a "reasonable mind" could not have accepted this evidence as adequate to support the relative weight the ALJ assigned to each of the medical opinion sources, even if a reasonable mind could also have reached a different conclusion. *See Ealy*, 594 F.3d at 512.

True, SSA regulations provide that an ALJ of the SSA should "[g]enerally … give more weight to the medical opinion of a source who has examined [a claimant] than to the medical opinion of a medical source who has not examined [the claimant]."

13

20 C.F.R. § 404.1527(c)(1). They also provide that the opinion of a relevant specialist "generally" should receive greater weight than the opinion of a source who lacks a relevant specialization. *See* 20 C.F.R. § 404.1527(c)(5). But these are only two of a number of factors that the ALJ should consider when assigning weight to medical opinion evidence, with others including supportability, consistency with the record as a whole, and a residual "other factors" category that includes familiarity with the SSA's programs. *See generally* 20 C.F.R. § 404.1527(c). Here, there was substantial evidence in the record to support the ALJ's determination that the supportability, consistency, and familiarity factors weighed more heavily in favor of a determination that Plaintiff could perform medium work than any factors that may have pointed to a different assignment of weight. (*See* R., Doc. 4, #41).

Plaintiff also argues that the ALJ erred under the Sixth Circuit's decision in *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408–09 (6th Cir. 2009), by giving greater weight to the opinions of non-examining sources who did not review the FCE, since the FCE was completed after the non-examining sources provided their opinions. (Obj., Doc. 12, #595). In *Blakley*, the Sixth Circuit reversed an ALJ for insufficiently explaining a decision to give greater weight to a non-examining source's medical opinion than to the opinion of a *treating* source. 581 F.3d at 408–09. The ALJ erred because the non-examining sources had not reviewed the records from several examinations by treating sources (since those treating-source examinations occurred after the non-examining sources' review). *Id.* at 409. Here, the FCE is not the opinion of Plaintiff's treating physician, as discussed at length above. Nevertheless, a similar

14

rationale may apply to examining sources even if they are not treating sources, albeit with less strength. *See* Soc. Sec. Rule 96-6p, 1996 WL 374180, at *3 (July 12, 1996).

Still, the quantity and quality of materials that the non-examining sources did not have the opportunity to review in this case, comprising the FCE and a few other miscellaneous records (*see* R&R, Doc. 11, #581), is modest compared with the situation in *Blakley*, where the non-examining sources missed "over 300 pages of medical evidence," including notes from at least four examinations by treating sources that occurred after the non-examining sources' review. *See* 581 F.3d at 409. Moreover, Sixth Circuit case law also suggests that the ALJ's decision should be affirmed where the ALJ himself discusses the medical evidence that the non-examining source did not have a chance to consider, which the ALJ did in this case. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248 (6th Cir. 2016) ("Though … [the non-examining source's] assessment was completed in 2008, the ALJ's own analysis clearly spanned the entire record."). Accordingly, the Court agrees with the Magistrate Judge that the ALJ did not commit *Blakley* error in assigning the non-examining sources' opinions more weight than the opinions of examining sources. (*See* R&R, Doc. 11, #581). The non-examining sources had access to almost all of Plaintiff's medical record, and the ALJ himself addressed the modest amount of medical evidence that the non-examining sources had not reviewed.

In short, substantial evidence supports the ALJ's assignment of weight to the various medical opinions in this case, and Plaintiff has failed to show that the ALJ

did not apply the correct legal standards in determining what weight to assign to the various items of medical opinion evidence in the record.

Next, Plaintiff faults the ALJ for failing to give sufficient weight to Plaintiff's own subjective reports of symptoms including fatigue, nausea, blurred vision, and frequent urination from her diabetes. (Obj., Doc. 12, #599; *see also* R&R, Doc. 11, #585). The ALJ found those subjective complaints to be partially inconsistent with the weight of the objective evidence in the record. (*See* R., Doc. 4, #40). The ALJ again reasoned that Plaintiff's physician records from Dr. Samaan show mostly normal findings over time. (*Id.*). The ALJ also relied on Plaintiff's reports to Dr. Samaan that she engaged in activities at home such as lifting objects and exercising, which in the ALJ's view undermined some of Plaintiff's more extreme subjective complaints. (*Id.* at #40–41). And the ALJ noted Plaintiff's A1C level of 8, which the ALJ characterized as indicating Plaintiff's diabetes is "not … uncontrolled," combined with the fact that Plaintiff had "poor compliance with medications" and was reluctant to start insulin, as factors tending to undermine some of her subjective complaints. (*Id.*).

Again, the Court concludes that substantial evidence, including the records of Plaintiff's own treating physician, Dr. Samaan, supports the decision to partially discount Plaintiff's subjective complaints. Plaintiff argues that the ALJ misunderstood the significance of an A1C of 8, which Plaintiff says is not "normal." (*See* Obj., Doc. 12, #599). But as the R&R notes, the ALJ never said it was "normal"; instead, the ALJ reasonably described Plaintiff's diabetes as "not uncontrolled" and "without complications" in spite of the elevated A1C. (*See* R&R, Doc. 11, #583). In

16

similar fashion, Plaintiff faults the ALJ's reliance on her daily activities, self-reported to Dr. Samaan, as cherry-picking, but this was only one of several factors influencing the ALJ's decision to partially discount Plaintiff's subjective complaints. (*See* R., Doc. 4, #40–41). Plaintiff also notes that she has tried medicines other than insulin and speculates that even if she took insulin, it would not have a sufficient impact on her exertional ability to be material to the analysis of her subjective complaints. (*See* Obj., Doc. 12, #599). But Plaintiff fails to support her argument that it was somehow impermissible for the ALJ to rely on evidence of noncompliance with medications and reluctance to try insulin in partially discounting Plaintiff's subjective complaints.

In the Court's view, Plaintiff's contentions establish, at most, that a reasonable mind *could* have credited Plaintiff's subjective complaints to a greater extent than the ALJ did. Plaintiff fails to show that a reasonable mind *could not* have accepted the record evidence on which the ALJ relied as adequate to partially discount Plaintiff's subjective complaints. Moreover, the ALJ did not selectively examine only the portions of the record that tended to undermine Plaintiff's complaints, as Plaintiff argues. (*See* Obj., Doc. 12, #599–600 (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002))). Instead, the ALJ gave consideration to the entire record. (*See* R., Doc. 4, #40–41). In the same vein, the ALJ did not base his discounting of Plaintiff's subjective complaints only on the absence of objective evidence of symptoms, as Plaintiff asserts. (*See* Obj., Doc. 12, #599 (citing 20 C.F.R. § 404.1529(c)(2))). Instead, the ALJ based his evaluation of Plaintiff's subjective complaints both on the absence of such evidence and on the presence of evidence that,

17

in the ALJ's view, partially undermined the weight to be given to those complaints. (*See* R., Doc. 4, #40). Accordingly, substantial evidence supports the ALJ's decision to partially discount Plaintiff's subjective complaints, and the ALJ did not commit any legal error in his assessment of the weight to give those complaints.

In sum, the ALJ's determination that Plaintiff can perform medium work is supported by substantial evidence in the record, even if there are other conclusions that could also be consistent with substantial evidence in the record. Moreover, the ALJ applied the proper legal standards in evaluating the evidence at issue. Accordingly, the Court **OVERRULES** Plaintiff's Objection (Doc. 12) insofar as it concerns the ALJ's conclusion that Plaintiff can perform medium work.

**C. Substantial Evidence Supports The ALJ's Conclusion That Jobs Plaintiff Can Perform Exist In Significant Numbers In The National Economy.**

Although asserted "medical errors" comprise the bulk of Plaintiff's Objection (Doc. 12) to the Magistrate Judge's R&R (Doc. 11), Plaintiff also assigns "vocational errors" related to the determination that jobs Plaintiff can perform exist in significant numbers in the national economy. (*See* Obj., Doc. 12, #600). To the extent that Plaintiff merely reiterates that the ALJ's questions to the vocational expert were premised on the finding that Plaintiff could perform medium work, a finding with which Plaintiff disagrees, the Court has already addressed that issue at some length. But Plaintiff also objects to the ALJ's decision to credit the vocational expert's testimony that there are "medium work" jobs for which Plaintiff would be qualified

18

where Plaintiff could sit for a total of two hours in an eight-hour day. (*Id.*). In Plaintiff's view, that testimony was "not reliable." (*Id.*).

The expert in question testified that his opinions were consistent with the *Dictionary of Occupational Titles* and with his own professional experience. (*See* R., Doc. 4, #50–53). Plaintiff speculates that none of the jobs in the "medium unskilled" category would allow for two hours a day of sitting, but points the Court to nothing that either rules out this possibility as a matter of fact or suggests that the ALJ's reliance on such testimony constitutes legal error. Moreover, Plaintiff has not shown how any such error would be other than harmless, given that the ALJ's finding of restrictions on Plaintiff's ability to perform "medium work" did not even focus on the exact amount of time that Plaintiff would be standing, but instead on whether Plaintiff would be subject to "fast production rate or pace work." *Cf. Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (applying harmless error analysis where ALJ did not misapply a legal principle but "simply erred in a factual finding").

Accordingly, the ALJ's determination that jobs Plaintiff can perform exist in significant numbers in the national economy is based on substantial evidence, and the ALJ did not commit any legal error in so determining. The Court therefore **OVERRULES** Plaintiff's Objection (Doc. 12) to the extent that it contends otherwise.

## CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Objections (Doc. 12), **ADOPTS** the Magistrate Judge's R&R (Doc. 11), **DISMISSES** Plaintiff's

Complaint (Doc. 1) **WITH PREJUDICE**, and **DIRECTS** the Clerk to enter judgment and **TERMINATE** this case on its docket.

    **SO ORDERED.**

January 20, 2022
**DATE**

                        **DOUGLAS R. COLE**
                        **UNITED STATES DISTRICT JUDGE**